```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

BENNY L. DEMASTUS,                §
                                  §
          Plaintiff,              §
                                  §
v.                                §     CIVIL NO. H-05-1674
                                  §
JO ANNE B. BARNHART,              §
COMMISSIONER OF THE               §
SOCIAL SECURITY ADMINISTRATION,   §
                                  §
          Defendant.              §
```

## MEMORANDUM OPINION

Pending before the court[1] are Defendant's Motion for Summary Judgment (Docket Entry No. 15) and Plaintiff's Motion for Summary Judgment (Docket Entry No. 16).  The court has considered the motions, all relevant filings, and the applicable law.  For the reasons set forth below, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

### I.  Case Background

**A.  Procedural History**

In this action, Plaintiff seeks review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for a period of disability, disability insurance benefits and supplemental security income under Title II

---

[1] The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Docket Entry Nos. 12-14.

and Title XVI of the Social Security Act ("the Act").  Plaintiff initially filed his application on March 11, 2003.[2]  Plaintiff claimed an inability to work since January 1, 2002, due to tremors, neck pain and back pain.[3]  After Plaintiff's application was denied at the initial[4] and reconsideration levels,[5] he requested a hearing before an Administrative Law Judge of the Social Security Administration ("ALJ").[6]  The ALJ granted Plaintiff's request and conducted a hearing in Houston, Texas, on December 1, 2004.[7]  After listening to testimony presented at the hearing and reviewing the medical record, the ALJ issued an unfavorable decision on January 18, 2005.[8]  The ALJ found Plaintiff was not disabled at any time during the period covered by his application because he could still perform light work and was able to return to his past relevant work as an electronics installation specialist.[9]

On April 11, 2005, the Appeals Council denied Plaintiff's

---

[2]   Administrative Transcript ("Tr.") 44-46.

[3]   Tr. 12, 44. In his Motion for Summary Judgment, Plaintiff claims he is disabled due to cervical and lumbar spine strain, dystonia, degenerative disc disorder, and associated muscular spasms and pain.  See Plaintiff's Motion for Summary Judgment and Supporting Brief ("Plaintiff's Motion for Summary Judgment"), Docket Entry No. 16.

[4]   Tr. 17.

[5]   Tr. 27.

[6]   Tr. 31.

[7]   Tr. 156.

[8]   Tr. 11-15.

[9]   Tr. 15.

request for review, thereby making the ALJ's decision the final decision of the Commissioner.[10] Having exhausted his administrative remedies,[11] Plaintiff brought this timely civil action for review of the Commissioner's decision, pursuant to 42 U.S.C. § 405(g).[12]

**B.   Factual History**

    **1.   Plaintiff's Age, Education, and Work Experience**

Plaintiff was born on December 11, 1946, and was 57 years of age at the time of the hearing before the ALJ.[13] He has a high school education and completed two years of college.[14] Plaintiff's past relevant work experience involves employment as a quality control assistant and an electronics installation specialist.[15]

    **2.   Plaintiff's Medical Evidence**

Plaintiff recounted that prior to his alleged onset date of disability, his hands were "jerking and locking up" and that he began to drop tools and equipment while at work.[16] He further alleged that he began to experience increasingly worse pain in his

---

[10]  Tr. 3-5.

[11]  See Harper v. Bowen, 813 F.2d 737, 739 (5th Cir. 1987), for a summary of the administrative steps a disability claimant must take in order to exhaust his administrative remedies.

[12]  Plaintiff's Complaint, Docket Entry No. 1.

[13]  Tr. 160.

[14]  Id.

[15]  Tr. 162.

[16]  Tr. 163.

neck and shoulders, and was ultimately diagnosed with dystonia.[17]

In November 2002, one of Plaintiff's treating physician noted that he had a tremor accompanied by synovial thickening of the fingers, and the physician recommended that Plaintiff drink alcoholic beverages less frequently.[18] A physical examination revealed an intention tremor on a finger to nose test.[19] On February 27, 2003, Plaintiff reported that he was experiencing hand tremors less frequently and was continuing to drink rum six days per week.[20] Plaintiff reported to one of his treating physicians that he suffered from memory loss and had a family history of Parkinson's disease.[21]

On May 5, 2003, Plaintiff complained of spasms and pain in his body, primarily in his back, neck and shoulders.[22] Donald Gibson II, M.D. ("Dr. Gibson") examined Plaintiff and reported that he had normal neurological functioning.[23] Dr. Gibson further noted that Plaintiff had never had any serious injuries, radiculopathy, or spinal injury.[24] The examination results indicated that Plaintiff's

---

[17]   Id.

[18]   Tr. 12.

[19]   Id.

[20]   Tr. 129.

[21]   Tr. 118, 164.

[22]   Tr. 90-92.

[23]   Tr. 12, 90.

[24]   Tr. 90.

gait and coordination were normal; he did not have localized muscle weakness or atrophy; he did not show signs of clubbing, cyanosis or edema of the extremities; his straight leg raising was negative; and his peripheral joint examination was normal with a full range of motion.[25]  An x-ray of Plaintiff's cervical spine revealed mild degenerative disc disease with a straightening of the normal lordotic curve indicating spasms.[26]  One of Plaintiff's treating physicians diagnosed him with tremors and elevated levels of thyroid-stimulating hormone ("TSH").[27]

On May 15, 2003, Randal R. Reid, M.D. ("Dr. Reid") examined Plaintiff.[28]  Dr. Reid reported that Plaintiff's neck appeared to be supple with no masses; his back was non-tender; his neurological exam revealed no focal abnormalities; and his peripheral joint exam was normal.[29]  Dr. Reid noted that Plaintiff's allegations of pain were not fully supported by the medical evidence on the record.[30]

On December 30, 2003, an MRI of the cervical spine showed mild degenerative disc disease at C6-C7 without canal stenosis or foraminal compromise.[31]  The report noted that there was no gross

---

[25]   Tr. 12, 90-92.

[26]   Tr. 92.

[27]   Tr. 108.

[28]   Tr. 93.

[29]   Id.

[30]   Id.

[31]   Tr. 111.

evidence of nerve root impingement.[32]  On September 13, 2004, a diagnostic radiology report indicated that plaintiff's joints were normal and that he had no soft tissue calcifications.[33]  He was diagnosed with sciatica and dystonia.[34]  That same day, Plaintiff reported that he had experienced only six spasms in the prior month as a result of his medication regimen.[35]  The doctor noted that Plaintiff had not needed increasing amounts of pain medication since his last visit.[36]  Plaintiff's medications included Clorazepate, Aleve and Baclofen.[37]

### 3. Administrative Hearing Testimony

At the administrative hearing conducted on December 1, 2004, Plaintiff and a vocational expert ("VE") testified.  Plaintiff testified that he left his employment in 2001 when his hands began "locking" and "jerking", causing him to drop his tools and equipment while at work.[38]  He stated that he experienced spasms and severe pain in his neck, shoulders, wrists and fingers several times in a week.[39]  Plaintiff noted that he was diagnosed with

---

[32]  Id.

[33]  Tr. 94.

[34]  Tr. 95.

[35]  Tr. 97.

[36]  Id.

[37]  Tr. 95, 107.

[38]  Tr. 163.

[39]  Tr. 164.

dystonia and that he was undergoing tests to determine if he had Parkinson's disease.[40]

Plaintiff testified that his medications caused drowsiness and that he experienced soreness in his neck and shoulders.[41] Plaintiff further stated that he experienced tingling and numbness in his arms when he sat and that he had difficulty gripping with his hands.[42] Plaintiff recounted that he had difficulty bending down to pick up objects and sitting for long periods of time.[43]

After Plaintiff concluded his testimony, the VE, Emma Y. Vasquez ("Ms. Vasquez"). Ms. Vasquez classified Plaintiff's past jobs in electronics installation as light to medium, skilled work.[44] The VE noted that the Dictionary of Occupational Titles ("DOT") classified this job as requiring a light level of work.[45] The VE further opined that Plaintiff's skills would not be transferrable to a sedentary level of work.[46]

## II.  Legal Standards

**A.   Standard of Review**

---

[40]   Tr. 163-64.

[41]   Tr. 165-66.

[42]   Tr. 166-67.

[43]   Tr. 169-70.

[44]   Tr. 173-74.

[45]   Tr. 175.

[46]   Tr. 174.

This court's review of a final decision by the Commissioner denying disability benefits is limited to determining (1) whether substantial record evidence supports the decision and (2) whether the ALJ applied proper legal standards in evaluating the evidence. Brown v. Apfel, 192 F.3d 492, 496 (5th Cir. 1999).

If the findings of fact contained in the Commissioner's decision are supported by substantial evidence, they are conclusive, and this court must affirm. Selders v. Sullivan, 914 F.2d 614, 617 (5th Cir. 1990). Substantial evidence is described as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); it is "more than a mere scintilla, and less than a preponderance." Spellman v. Shalala, 1 F.3d 357, 360 (5th Cir. 1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Under this standard, the court must review the entire record but may not reweigh the record evidence, determine the issues de novo, or substitute its judgment for that of the Commissioner. Brown, 192 F.3d at 496.

**B.   Standard to Determine Disability**

In order to obtain disability benefits, a claimant bears the ultimate burden of proving he is disabled within the meaning of the

Act.  Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir. 1991). Specifically, under the legal standard for determining disability, the claimant must prove he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can expect to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a); see also Greenspan, 38 F.3d at 236.  The existence of such disability must be demonstrated by "medically acceptable clinical and laboratory diagnostic findings."  42 U.S.C. §§ 423(d)(3), (d)(5); see also Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983).

To determine whether a claimant is disabled under this standard, Social Security Act regulations ("regulations") provide that a disability claim should be evaluated according to a sequential five-step process:

> (1) An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.
>
> (2) An individual who does not have a "severe impairment" will not be found to be disabled.
>
> (3) An individual who meets or equals a listed impairment in Appendix 1 of the regulations, 20 C.F.R. Pt. 404, Subpt. P ["Listings"], will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made.
>
> (5) If an individual's impairment precludes him from performing his past work, other factors including age,

>education, past work experience, and residual functional
>capacity must be considered to determine if other work
>can be performed.

Bowling v. Shalala, 36 F.3d 431, 435 (5th Cir. 1994); see also 20 C.F.R. § 404.1520.  The claimant bears the burden of proof on the first four steps of the inquiry, while the Commissioner bears it on the fifth.  Crowley v. Apfel, 197 F.3d 194, 198 (5th Cir. 1999); Brown, 192 F.3d at 498.  The Commissioner can satisfy this burden either by reliance on the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir. 1987).  If the Commissioner satisfies her step-five burden of proof, the burden shifts back to the claimant to prove he cannot perform the work suggested.  Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).  The analysis stops at any point in the process upon a conclusive finding that the claimant is disabled or not disabled. Greenspan, 38 F.3d at 236.

### III.  Analysis

In his formal decision, the ALJ first noted that Plaintiff had met the disability insured status requirements of the Act from the alleged onset date of disability through the date of the decision.[47] The ALJ then followed the five-step process outlined in the regulations, finding at the first step that Plaintiff had not engaged in any substantial gainful activity since his alleged onset

---

[47]    Tr. 11.

10

date of disability, January 1, 2002.[48] At step two, the ALJ found that Plaintiff suffered from cervical and lumbar spine strain, which were severe impairments under the regulations.[49] However, at step three, the ALJ determined these impairments were not of a severity sufficient to meet or equal any of the Listings, and therefore, were not presumptively disabling under the Act.[50]

The ALJ then took into consideration the information contained in Plaintiff's medical records, as well as the testimony presented at the hearing, and concluded at step four that Plaintiff retained a residual functional capacity ("RFC") to perform light work.[51] Specifically, the ALJ determined Plaintiff was capable of lifting and carrying ten pounds frequently and twenty pounds occasionally.[52] Based on Plaintiff's RFC, the ALJ concluded that Plaintiff could perform his past relevant work as an electronics installation specialist.[53] Having concluded his analysis at step four, the ALJ found Plaintiff "not disabled" and, accordingly, denied his claims for a period of disability and disability insurance benefits under Title II and Title XVI of the Act.[54]

---

[48] Tr. 12.

[49] Id.

[50] Tr. 14.

[51] Tr. 15.

[52] Id.

[53] Id.

[54] Id.

In his motion for summary judgment, Plaintiff sets forth two arguments specifying why the ALJ committed reversible error in his decision. Plaintiff first contends the ALJ's RFC finding is not supported by substantial evidence.[55] Second, he argues that the ALJ's finding that Plaintiff could return to his previous job as an electronics installation specialist is not supported by substantial evidence.[56] Defendant, on the other hand, contends the ALJ employed proper legal standards in reviewing the evidence and that the ALJ's decision is supported by substantial evidence of record.[57] Defendant therefore maintains the ALJ's decision should stand.[58] The court will consider each argument in turn.

### A.   Plaintiff's First Argument

Plaintiff first contends the ALJ erred by concluding that Plaintiff had an RFC to perform light, skilled work.[59] The court disagrees.

In his opinion, the ALJ found that Plaintiff was capable of performing light work, which was consistent with the testimony of the VE and the medical evidence on the record.[60] Plaintiff claims

---

[55]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 16.

[56]   Id.

[57]   Brief in Support of Defendant's Motion for Summary Judgment, Docket Entry No. 15.

[58]   Id.

[59]   Plaintiff's Motion for Summary Judgment, Docket Entry No. 16.

[60]   Tr. 15, 173-74.

that the ALJ discredited the opinions of two of Plaintiff's treating physicians, Dr. Riley and Dr. Sulelef, who found that Plaintiff suffered from dystonia, tremors, and cervical and lumbar strains associated with pain.[61] The court first notes that Plaintiff did not have a continuing relationship with either of these treating physicians. Instead, the record indicates that Plaintiff saw each of the physicians on only one or two separate occasions. On September 13, 2004, Dr. Sulelef diagnosed Plaintiff with dystonia.[62] On a separate occasion, Dr. Riley diagnosed Plaintiff with tremors and noted that he had mild degenerative disc disease at C6-C7.[63]

Under the Act, the ultimate responsibility for determining a claimant's disability status lies with the Commissioner. Spellman, 1 F.3d at 364 (citing 20 C.F.R. § 404.1527(e)(1)). This is because a determination of disability is not a medical opinion, but instead a legal conclusion only the Commissioner has authority to make. Frank v. Barnhart, 326 F.3d 618, 620 (5th Cir. 2003). The ALJ was not required to make further inquiries of either of these physicians. The medical evidence on the record indicates that neither of the physicians determined that Plaintiff was unable to work as a result of his impairments or that he was unable to

---

[61] Plaintiff's Motion for Summary Judgment, Docket Entry No. 16.

[62] Tr. 97.

[63] Tr. 108.

perform a range of light work.  Accordingly, the court rejects Plaintiff's argument.

Plaintiff next argues that he is unable "to meet the rigors of substantial gainful employment at the light exertional level" because he "suffers from numerous physical limitations that require him to frequently stop any physical activity and that limit his mobility to an extremely low pace."[64]  He further contends that substantial evidence supports Plaintiff's RFC to be less than sedentary.[65]

The court finds that Plaintiff's alleged physical limitations are simply not supported by the medical evidence on the record. The court further notes that the record evidence supports the ALJ's conclusion that plaintiff could perform light work.  Light work involves lifting twenty pounds at a time with frequent lifting or carrying of objects weighing ten pounds.  20 C.F.R. § 416.967(b). It also requires walking or standing for six hours during an hour workday.  Id.

On May 5, 2003, Dr. Gibson reported that Plaintiff's gait and coordination were normal; he did not have muscle weakness or atrophy; his straight leg raising was negative; and his peripheral joint examination was normal with a full range of motion.[66]

---

[64]    Plaintiff's Motion for Summary Judgment, Docket Entry No. 16.

[65]    Id.

[66]    Tr. 12, 90-92.

Although an x-ray of Plaintiff's cervical spine revealed mild degenerative disc disease, Dr. Reid reported that Plaintiff's neck appeared to be supple with no masses and a neurological exam revealed no focal abnormalities.[67] Dr. Reid further reported that Plaintiff's allegations of pain were not fully supported by the medical evidence on the record.[68]

On December 30, 2003, an MRI of the cervical spine reported no nerve root impingement.[69] On September 13, 2004, a diagnostic radiology report indicated that plaintiff's joints were normal and that he had no soft tissue calcifications.[70] Plaintiff himself reported that he had experienced only six spasms in the prior month as a result of his medication, Clorazepate.[71] Even during the hearing before the ALJ, Plaintiff testified that he experienced spasms only "a few times a week, not as much."[72] Accordingly, based on this evidence, the ALJ's RFC determination was proper. Consequently, Plaintiff's arguments are rejected.

**B.   Plaintiff's Second Argument**

Plaintiff next contends the ALJ's finding that Plaintiff could

---

[67]   Tr. 93.

[68]   Id.

[69]   Tr. 111.

[70]   Tr. 94.

[71]   Tr. 97.

[72]   Tr. 164.

return to his prior job as an electronics installation specialist is not supported by substantial evidence.[73] The court disagrees with this contention as well.

At the administrative hearing, the ALJ solicited the testimony of the VE to help him determine whether Plaintiff could return to his work as an electronics installation specialist. The VE testified that Plaintiff's past job was classified as light to medium, skilled work.[74] The VE further opined that the DOT classifies Plaintiff's previous jobs as light jobs that require a lot of standing and good manual as well as bilateral dexterity.[75] Based on the VE's testimony and the medical evidence on the record, the ALJ concluded that Plaintiff could return to his job as an electronics installation specialist.[76] As noted in section III.A. above, the medical evidence in the record indicates that Plaintiff's spasms were extremely sporadic and that he would not encounter any difficulty returning to his previous employment. Accordingly, the court likewise rejects this argument.

## C. Defendant's Motion for Summary Judgment

Defendant asserts in her motion that the ALJ's decision should be affirmed because the ALJ properly determined Plaintiff was never

---

[73] Plaintiff's Motion for Summary Judgment, Docket Entry No. 16.

[74] Tr. 173-74.

[75] Tr. 175.

[76] Tr. 14.

under a disability.[77]

In this instance, the issue is whether Defendant met her burden at step four of the sequential analysis of proving Plaintiff was able to perform his past, relevant work, which was classified as light work. For the reasons stated above, the court finds the Commissioner satisfied her burden. As a result, the ALJ's decision finding Plaintiff not disabled is supported by substantial record evidence. The court also agrees with Defendant that the ALJ applied proper legal standards in evaluating the evidence and in making her determination. Therefore, Defendant's motion for summary judgment will be granted.

## IV. Conclusion

Based on the foregoing, the court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

SIGNED in Houston, Texas, this 14th day of March, 2006.

Nancy K. Johnson
United States Magistrate Judge

---

[77] Brief in Support of Defendant's Motion for Summary Judgment, Docket Entry No. 15.